**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| ROBERT W. GLOMB, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action |
| | § | No. C-06-473 |
| THE UNITED STATES OF AMERICA, | § | |
| et al., | § | |
| | § | |
| Defendants. | § | |

**ORDER**

The Court hereby VACATES its Order dated August 21, 2007 (D.E. 30), granting Defendant United States of America's motion for summary judgment (D.E. 24) in this action, and hereby orders as follows:

For the reasons set forth below, the Court determines that it does not have subject-matter jurisdiction over Plaintiff Robert Glomb's tort claims for negligence and gross negligence against the United States, and the Court therefore DISMISSES Plaintiff's claims against the United States for lack of subject-matter jurisdiction. Further, because the United States is DISMISSED from this lawsuit, the Court also DISMISSES Plaintiff's remaining claims for negligence and gross negligence against Defendant RC Foundation, n/k/a/ The LC Foundation, Inc. (hereinafter, "LCF"), without prejudice, for lack of subject-matter jurisdiction.

**I.    Factual Background**

The following facts are not in dispute:  At the time of the

events in question, Plaintiff Robert Glomb was employed by Lockheed Martin as a flight simulator instructor. (DX-E[1], Glomb Dep., 40:16-42:10). In this capacity, Mr. Glomb taught student aviators on a certain type of flight simulator. (Id.). Mr. Glomb worked in Building 89 at Naval Air Station Corpus Christi, Texas ("NAS-CC"), where he had worked since 1996. (Id., 52:4-5). Building 89 is a two-story building that houses, among other things, flight simulators, briefing rooms, and an "instructor's lounge" where Lockheed Martin instructors had lockers to keep their things. (Id., 41:6-25). This instructor's lounge was on the second floor of Building 89. (Id., 47:24-48:8).

Simulator training in Building 89 generally took place from 7:00 a.m. until approximately 10:00 p.m. on every weekday, with occasional events taking place on weekends. (PX-2, Curtis Dep., 11:12-12:11, 15:24-16:7). Mr. Glomb generally worked from 2:00 p.m. until approximately 10:00 to 10:30 p.m. (Glomb Dep., 40:4-12). On November 16, 2004, Mr. Glomb began work around 2:00 p.m. (Id., 43:8-10). On that day, Mr. Glomb worked with three student aviators, briefing them, taking them through their events in the flight simulator, and then de-briefing them. (Id., 42:14-17). He finished de-briefing his third and final student aviator of the day

---

[1]For ease of reference, the United States' exhibits are referred to by the designation "DX," and the Plaintiff's exhibits are referred to by the designation "PX."

around 10:00 to 10:30 p.m.  (Id., 46:1-7).  After de-briefing the student, Mr. Glomb proceeded to the second story of Building 89 to put his books in his locker in the instructor's lounge.  (Id., 42:14-43:7).  At that time, LCF part-time employee Ron Murchison had applied stripper to an area of the floor in the lounge.  (DX-B, Murchison Dep., 31:6-31:9).  The purpose of this stripper was to remove old wax from the floor, so that new wax could be applied.  (Murchison Dep., 9:20-24).  The stripper would be applied, sit for a while, and then be removed.  (Id., 85:12-87:19).  When Mr. Glomb entered the instructor's lounge, he stepped on the stripper and fell down, breaking his right arm.  (Glomb Dep., 52:25-53:19).

LCF (formerly RC Foundation) had a contract with the Department of the Navy to conduct janitorial services in buildings on NAS-CC and Naval Air Station Kingsville, Texas ("NASK").  (DX-A, PX-10, Contract Documents).  The contract provided that the floors in Building 89 on NAS-CC were to be stripped and re-waxed twice a year.  (Id.).  On the night of November 16, 2004, LCF employee Ron Murchison was stripping and re-waxing the floor of Building 89 on NAS-CC, pursuant to this contract.  (Id.; Murchison Dep., 8:3-8, 32:8-34:1).  At the time of Mr. Glomb's fall, Mr. Murchison worked as a part-time employee for LCF.  (Murchison Dep., 7:9-11, 32:8-34:1).  Mr. Murchison was also on active duty in the United States Navy, and on November 16, 2004, Mr. Murchison was stationed at NAS-CC and assigned to work security on the base.  (Id., 13:9-13).  Mr.

Murchison worked for LCF on his days and/or nights off from his Navy security position.  (Id., 13:24-14:8, 67:12-17).

## II.  **Procedural Background**

Plaintiff filed his Original Complaint in this case on October 26, 2006 (D.E. 1).  In his Complaint, Plaintiff brings claims for negligence and gross negligence against LCF, and he brings negligence and gross negligence claims against the United States of America, Department of the Navy, pursuant to the Federal Tort Claims Act (Id., ¶¶ 18-21).

On July 16, 2007, the United States filed its motion to dismiss, or in the alternative, motion for summary judgment (D.E. 24).[2]  In this motion, the United States argues that the Court does not have subject-matter jurisdiction over Plaintiff's tort claims against the United States, because the United States has not waived its sovereign immunity as to Plaintiff's causes of action.  (Motion, pp. 2-7).  In the alternative, the United States argues that even if the Court were to find subject-matter jurisdiction, the United States is entitled to summary judgment on Plaintiff's

---

[2] On July 17, 2007, the Court issued an order indicating that it would treat the United States' motion as a motion for summary judgment under Federal Rule of Civil Procedure 56 (D.E. 26).  While the Court does not treat the United States' motion as a motion to dismiss under Rule 12(b)(1), the Court must still examine whether the United States has waived its sovereign immunity as to Plaintiff's claims for negligence and gross negligence.  As set forth in this Order, the United States has not waived its sovereign immunity with regard to Plaintiff's tort claims, and the Court therefore must DISMISS Plaintiff's claims against the United States for lack of subject-matter jurisdiction.

claims because the United States did not cause or have knowledge of any defective condition on the instructor's lounge floor. (<u>Id.</u>, pp. 7-11). The United States has submitted evidence in support of its motion, in the form of excerpts of the depositions of Ron Murchison and Plaintiff Robert Glomb, declarations of Kevin Curtis and Duane Vaughn, and documents regarding the contract between LCF and the Department of the Navy. (<u>See</u> D.E. 24, DX-A through DX-F).

Plaintiff filed his response to the United States' motion for summary judgment on August 6, 2007 (D.E. 24). Plaintiff argues that the United States is liable on Plaintiff's tort claims because the United States contractually retained control over the work to be done by LCF, and because Ron Murchison was a "full time, active duty Navy petty officer" at the time of the events in question. (Response, pp. 3, 7). Plaintiff has submitted evidence in support of his response, in the form of excerpts of the deposition testimony of Kevin Curtis, declarations of various Lockheed Martin simulator instructors, an injury report on Plaintiff, and excerpts of the Lockheed Martin and LCF contracts with the Department of the Navy. (<u>See</u> D.E. 24, PX-1 through PX-11).

## III. <u>Discussion</u>

### A.   <u>Summary Judgment Standard</u>

Federal Rule of Civil Procedure 56 states that summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The substantive law identifies which facts are material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ellison v. Software Spectrum, Inc., 85 F.3d 187, 189 (5th Cir. 1996). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; see also Judwin Props., Inc., v. U.S. Fire Ins. Co., 973 F.2d 432, 435 (5th Cir. 1992).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1046-1047 (5th Cir. 1996). If the nonmovant bears the burden of proof on a claim, the moving party may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. See Celotex Corp., 477 U.S. at 325; Ocean Energy II, Inc. v. Alexander & Alexander, Inc., 868 F.2d 740, 747 (5th Cir. 1989).

Once the moving party has carried its burden, the nonmovant "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." First Nat'l Bank of Arizona v. Cities

Serv. Co., 391 U.S. 253, 270 (1968); see also Schaefer v. Gulf Coast Reg'l Blood Ctr., 10 F.3d 327, 330 (5th Cir. 1994) (stating that nonmoving party must "produce affirmative and specific facts" demonstrating a genuine issue).

When the parties have submitted evidence of conflicting facts, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Willis, 61 F.3d at 315. Summary judgment is not appropriate unless, viewing the evidence in the light most favorable to the nonmoving party, no reasonable jury could return a verdict for that party. See, e.g., Rubinstein v. Adm'rs of the Tulane Educ. Fund, 218 F.3d 392, 399 (5th Cir. 2000).

**B.  Sovereign Immunity and the Federal Tort Claims Act**

**1.  Sovereign Immunity**

The first issue the Court must examine is whether it has subject-matter jurisdiction over Plaintiff's tort claims against the United States. This is because "the United States is a sovereign, and, as such, is immune from suit unless it has expressly waived such immunity and consented to be sued." Hebert v. United States, 438 F.3d 483, 487 (5th Cir. 2006) (internal citations omitted); Truman v. United States, 26 F.3d 592, 594 (5th Cir. 1994) ("As the sovereign, the United States is immune from suit unless, and only to the extent that, it has consented to be sued"). Sovereign immunity is jurisdictional in nature. See Fed.

Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 475 (1994).   Such immunity protects the United States from liability, and deprives the court of subject-matter jurisdiction over claims against the United States.   See Hebert, 438 F.3d at 487-88 (citing United States v. Mitchell, 463 U.S. 206, 212 (1983)).   Thus, before a court proceeds on a case against the United States, it "must first decide whether one of the government's several waivers of sovereign immunity applies."   Truman, 26 F.3d at 594.

    **2.**    **Consent for Suit Pursuant to the Federal Tort Claims Act**

The Federal Tort Claims Act ("FTCA") provides consent for suit against the United States "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government *while acting within the scope of his office or employment*".   28 U.S.C. § 1346(b)(1) (emphasis added); see also Johnston v. United States, 85 F.3d 217, 218-19 (5th Cir. 1996); Truman, 26 F.3d at 594 ("Through the enactment of the FTCA, the government has generally waived its sovereign immunity from tort liability for the negligent or wrongful acts or omissions of its agents who act within the scope of their employment").   By its terms, however, "this waiver of sovereign immunity [in the Federal Tort Claims Act] only applies when the tortfeasor acts within the scope of his employment." Bodin v. Vagshenian, 2006 WL 2457104, *2 (5th Cir. 2006).

The FTCA provides that for tort claims, [t]he United States shall be liable ... in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages." 28 U.S.C. § 2674.   In other words, the FTCA "provides a remedy for persons injured by an employee of the Government who was acting *within the course and scope of his office or employment,* under circumstances *where the United States, if a private person, would be liable to the claimant* in accordance with the law of the place where the act or omission occurred." <u>Palmer v. Flaggman</u>, 93 F.3d 196, 199 (5th Cir. 1996) (emphasis in original) (internal citations omitted); <u>see also</u> <u>Cleveland v. United States</u>, 457 F.3d 397, 403 (5th Cir. 2006) (internal citations omitted) (the United States is liable for the acts of its employees "if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred").

### 3.   <u>FTCA Independent Contractor Exception</u>

Under the FTCA, the government is only liable for acts of its employees, ***not for acts of independent contractors***.   <u>See</u> 28 U.S.C. § 1346(b); <u>Lathers v. Penguin Indus., Inc.</u>, 687 F.2d 69, 72 (5th Cir. 1982) ("the United States is not liable for the negligence of an independent contractor with the Government."); <u>Aretz v. United States</u>, 604 F.2d 417, 427 (5th Cir. 1979) (the definition of the FTCA precludes "liability for the torts of an independent

contractor"); <u>Alexander v. United States</u>, 605 F.2d 828, 835 (5th Cir. 1979) (holding that the United States is not liable for the imputed negligence of an independent contractor; the Government is only liable for the active negligence of its employees).

**C.    The United States Has Not Waived Its Sovereign Immunity With Respect to Plaintiff's Tort Claims for Negligence and Gross Negligence**

In this case, pursuant to (1) the plain language of the FTCA; and (2) the FTCA independent contractor exception, the United States did not consent to be sued on Plaintiff's tort claims for negligence and gross negligence.  Accordingly, the Court does not have subject-matter jurisdiction over those claims against the United States.

**1.    Ron Murchison Was Not Acting Within the Scope of His Federal Employment When he Stripped and Waxed the Floors of Building 89 on November 16, 2004**

As noted above, the FTCA provides consent for suit against the United States "for injury or ... personal injury caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."  28 U.S.C. § 1346(b)(1).  For purposes of the FTCA, an "employee of the government" includes "members of the military or naval forces of the United States".    28 U.S.C. § 2671.

Accordingly, active duty Navy petty officer Ron Murchison, who conducted the floor stripping and waxing in Building 89 on November 16, 2004, would be considered an employee of the government for purposes of the FTCA. See id.; see also Murchison Dep., 8:3-8. However, in order for the United States to have waived its sovereign immunity, Mr. Murchison would have had to have been "acting within the scope of his [federal Navy] employment" while conducting the floor stripping and waxing. 28 U.S.C. § 1346(b)(1). For the reasons set forth below, the undisputed facts show that Ron Murchison was not acting within the scope of his Navy employment when he stripped and waxed the floors of Building 89 on November 16, 2004.

### a. **Scope of Employment**

For members of the armed forces, acting within the scope of their employment means acting "in [the] line of duty." Bettis v. United States, 635 F.2d 1144, 1147 (5th Cir. 1981); see also Weaver v. United States Coast Guard, 857 F.Supp. 539, 542 (S.D. Tex. 1994) ("When the United States is sued under the FTCA for the negligent acts of military personnel, it is only liable for acts committed in the 'line of duty.'"). "For purposes of the Federal Tort Claims Act, 'acting in the line of duty' means no more than acting within the scope of employment under the law of the place where the act or omission occurred." Verges v. United States, 1994 WL 532576, *1 (E.D. La. 1994) (citing Williams v. United States, 350 U.S. 857

(1955)); <u>see</u> <u>also</u> <u>Weaver</u>, 857 F.Supp. at 542 (the "line-of-duty determination" is governed by appropriate state law).

Under Texas law, "an employee's conduct is considered to fall within the scope of his employment if his actions were '(1) within the general authority given him; (2) in furtherance of the employer's business; and (3) for the accomplishment of the object for which the employee was employed.'" <u>Counts v. Guevara</u>, 328 F.3d 212, 214 (5th Cir. 2003) (citing <u>Mata v. Andrews Transport, Inc.</u>, 900 S.W.2d 363, 366 (Tex. App.--Houston [14th Dist.] 1995); <u>see</u> <u>also</u> <u>Williams v. United States</u>, 71 F.3d 502, 506 (5th Cir. 1995). Of note, in the Fifth Circuit, a court may also consider "special factors characteristic of military activity and discipline" as a part of its scope of employment analysis. <u>Weaver</u>, 857 F.Supp. at 542-43. Such considerations may include "whether the servicemember was traveling pursuant to specific orders when the negligent act was committed", "whether the servicemember was governed by specific military regulations, enforceable by military punishment", and whether the servicemember was on "liberty".[3] <u>Id.</u> at 543.

### b. Ron Murchison Was Not Acting Within the Scope of His Navy Employment

---

[3] Whether a servicemember is on liberty is not outcome determinative regarding the scope of employment determination. <u>See</u>, <u>e.g.</u>, <u>Washington v. United States</u>, 868 F.2d 332, 333 (9th Cir. 1989).

In this case, based on the undisputed facts, Ron Murchison was not acting within the scope of his federal employment when he stripped and waxed the floors in Building 89 on November 16, 2004. As noted above, in November, 2004, Mr. Murchison was an active duty Navy petty officer, stationed at NAS-CC and assigned to a position with base security. (Murchison Dep., 13:9-18). Mr. Murchison's described his NAS-CC security position as "like military police. We patrol the base, provide security, traffic tickets, respond to accidents, and stuff like that." (Id., 13:10-13). Mr. Murchison generally completed his work for his security position at the base around 5:00 to 5:15 p.m. (Id., 13:5-8). Also as noted above, during this time frame, Mr. Murchison also worked part-time for LCF doing janitorial services, such as buffing floors, shampooing carpets, and stripping and re-waxing floors. (Id., 7:23-8:2). Mr. Murchison worked for LCF on his nights and/or days off from his NAS-CC security position. (Id., 13:24-14:8).

On November 16, 2004, Mr. Murchison got "off work" from his NAS-CC security position, and changed out of his military uniform. (Id., 14:9-14). Mr. Murchison then picked up various LCF supplies and went to Building 89, spoke with individuals in a front office to inform them he was there to strip and wax the floors, and then commenced stripping and waxing in a second floor hallway. (Id.,

14:13-22).[4]  Mr. Murchison testified that he was working for LCF
when he stripped and waxed the floors in Building 89, and that the
stripping and waxing on November 16, 2004 did not "have anything to
do with [his] duties as an enlisted person in the Navy." (Id.,
33:24-34:10).  Mr. Murchison indicated that his part-time LCF
position did not interfere with his Navy hours or the work he was
doing in the Navy. (Id., 67:15-17).  Mr. Murchison testified that
he only worked for LCF on his "off time." (Id.).

Based on the above, Mr. Murchison's stripping and waxing of
the floors in Building 89 was not done within the scope of his Navy
employment.  Mr. Murchison's Navy position at NAS-CC involved base
security, not maintenance and cleaning of NAS-CC buildings. (Id.,
13:9-13).  Mr. Murchison's part-time janitorial work was not within
the "general authority" given to him by the Navy, nor was his
stripping and waxing done "in furtherance of the [Navy's] business"
or "for the accomplishment for which [Mr. Murchison] was employed
[by the Navy]." Counts, 328 F.3d at 214.  Also of note, there is
nothing in the record indicating that Mr. Murchison was on any
"official orders" while conducting his stripping and waxing of

_____

[4] Mr. Murchison drove to Building 89 in an LCF-owned Nissan
truck. (Murchison Dep., 49:16-25).  This truck was not a Navy or
government owned vehicle. (Id., 50:2-4).  The truck contained various
supplies necessary for the stripping and waxing of the floors. (Id.,
49:16-25).

Building 89[5], and he did his stripping and waxing work when he was off duty, after he "got off" his Navy security job around 5:00 to 5:15 p.m.[6] (Id., 14:9-14, 67:15-17, stating that his LCF work was on his "own time".)  These factors may be considered with regard to whether or not Mr. Murchison was acting within the scope of his employment.  See Weaver, 857 F.Supp. at 542-44.

Based on the above, Mr. Murchison, although classified as a federal employee, was not acting within the scope of his employment when he stripped and waxed the floors of Building 89 on November 16, 2004.  The United States therefore did not consent to suit under the FTCA for injuries resulting from the alleged negligent acts of Mr. Murchison on that night.[7]

---

[5] To the contrary, Mr. Murchison testified that his stripping and waxing on November 16, 2004 did not "have anything to do with [his] duties as an enlisted person in the Navy." (Murchison Dep., 33:24-34:10).

[6] Whether or not Mr. Murchison was technically "on duty" is not dispositive as servicemembers may be acting within the scope of their employment even if they are "off duty" or on "liberty" at the time of the incident in question. Weaver, 857 F.Supp. at 542-543. However, whether or not a servicemember is on duty is a factor that may be considered by the Court in its analysis of whether Mr. Murchison was acting within the scope of his employment. See id.

[7] Plaintiff argues that Mr. Murchison was required to seek permission to hold private employment due to his status as an active duty member of the United States Armed Forces. (Response, p. 13, citing 18 U.S.C. § 209).  However, such a requirement would not transmute Mr. Murchison's janitorial work for LCF into work done within the scope of his Navy employment.  Mr. Murchison testified that he was not aware of any regulation requiring him to obtain permission to take a civilian job, and he did not ask for, nor receive permission to take, part-time employment with LCF. (Id., 67:12-21).  Accordingly, Mr. Murchison did not have permission from any Department of Defense ("DoD") or United States Navy personnel to work at LCF. (Id.).

**2.** **United States Cannot Be Sued Under the FTCA for the Acts of LCF as an Independent Contractor**

As noted above, there is an independent contractor exception to the FTCA. Under this exception, the United States is only liable for the acts of its own employees, not for the acts of an independent contractor. See Lathers, 687 F.2d at 72. As set forth below, pursuant to the undisputed facts of this case, LCF was an *independent contractor* of the United States with regard to the floor stripping and waxing in Building 89 on November 16, 2004. Accordingly, pursuant to the FTCA, the United States cannot be sued for the negligence of LCF or its employees.

**a.** **Independent Contractor**

Whether a person is an employee or an independent contractor is governed by federal law. See Cavazos v. United States, 776 F.2d 1263, 1264 (5th Cir. 1985). The determination turns on "the authority of [the government] to control the detailed physical performance of the contractor." Loque v. United States, 412 U.S. 521, 527-28 (1973); see also Linkous v. United States, 142 F.3d 271, 275 (5th Cir. 1998) ("The critical factor in determining

---

Further, there is no indication that any DoD or Navy personnel knew of Mr. Murchison's part-time LCF employment. Moreover, even if he was required to obtain permission to hold his LCF job, such authorization alone would not transform his work for LCF into work within the scope of his Navy employment. Mr. Murchison's stripping and waxing on November 16, 2004 was not within the scope of his federal employment.

whether an individual is an employee of the government or an independent contractor is the power of the federal government to control the detailed physical performance of the individual"); <u>United States v. Orleans</u>, 425 U.S. 807, 815 (1976) (the key question "is not whether the ... agency receives federal money and must comply with federal standards and regulations, but whether its day-to-day operations are supervised by the federal government."); <u>Batieste v. United States</u>, 100 Fed.Appx. 959, 960 (5th Cir. 2004) ("scope of work document did not give the United States the requisite control in order for [alleged tortfeasor] to be considered an employee under the [Federal Tort Claims] Act."); <u>Guile v. United States</u>, 422 F.3d 221, 230, n. 10 (5th Cir. 2005) ("A retained right of inspection does not defeat the independent contractor exception unless the government actually supervises the contractor's day-to-day activities."); <u>Martin v. United States Dept. of Housing and Urban Dev.</u>, 1996 WL 84445, *2 (E.D. La. 1996) ("The Court must determine whether the United States exercises day-to-day control over the performance of the work under the contract").[8]

>    **b.**   **LCF was an Independent Contractor With Respect to the November 16, 2004 Floor Stripping and**

---

[8] The mere fact that an individual must comply with federal standards and regulations does not make the individual a federal employee under the FTCA. <u>Orleans</u>, 425 U.S. at 815.

**Waxing**

As set forth below, based on the undisputed facts of the case, the United States did not control the day-to-day operations or the detailed physical performance of LCF. Accordingly, LCF was an **_independent contractor_** with respect to the stripping and waxing of Building 89 on November 16, 2004. See Batieste, 100 Fed.Appx. at 960, n. 10.

In this case, the United States did not supervise, train, or control the performance of Ron Murchison with respect to the floor stripping and waxing in Building 89. Rather, on the night of the events in question, Mr. Murchison was supervised by Rudy Reyes, an RCF employee. (Murchison Dep., 8:5-14). Mr. Murchison was not supervised by any United States Navy personnel, or any personnel of the United States Civil Service. (Id.). Further, it was LCF that trained Mr. Murchison on the type of stripping and waxing he conducted on November 16, 2004 (stripping with a "wet vac"). (Id., 38:19-39:3). This training was not done by the Navy. (Id.). LCF also set the work hours for its employees, established employee leave policies, established what type of safety equipment employees were to use for certain procedures, and mandated that injuries or incidents must be reported to an LCF project manager. (Id., 39:4-48:8; Exhibits 3-11 to Murchison Dep.).[9] LCF also ordered and

---

[9] After Plaintiff's fall, Mr. Murchison left a note in the LCF truck for his LCF supervisor regarding the incident, but he did not

provided supplies for employees, and set the timetable for employees to receive and request necessary supplies. (Murchison Dep., 48:25-49:14).

When Mr. Murchison arrived to do the actual stripping and waxing in Building 89 on the night of Plaintiff's fall, Mr. Murchison did not receive any instructions from Navy or Civil Service personnel regarding the floor stripping and waxing. (Id., 55:9-17). Of note, Mr. Murchison indicated that while he worked for LCF, no military or Civil Service personnel ever instructed him on how to conduct stripping and waxing operations. (Id., 55:22-56:1).

Also of note, the military and Civil Service personnel that worked in Building 89 did not survey or monitor how LCF was performing its janitorial functions. (DX-C, Curtis Decl., p. 2). To the contrary, the involvement of military or Civil Service personnel in LCF's floor stripping and waxing was limited to scheduling the date to conduct the operations, letting LCF employee(s) into the building, and locking up when they were done.[10]

inform any Navy or Civil Service personnel that Plaintiff fell in the instructor's lounge. (Murchison Dep., 48:9-15).

[10] Generally, stripping and waxing operations were supposed to take place on weekends, when there were no events scheduled in the building. (Vaughn Decl., p. 1; Curtis Dep., 18:20-19:17). To arrange stripping and waxing for Building 89, LCF employees would contact the building monitor, who was an active duty Navy petty officer, and schedule a time to conduct the stripping and waxing. (Vaughn Decl., pp. 1-2; Curtis Dep., 14:20-16:23, 17:13-19:16, 36:10-37:15, 59:16-60:11). The building monitor would contact the assistant officer in

(DX-D, Vaughn Decl., pp. 1-2; Curtis Dep., 14:20-16:23, 17:13-19:16, 36:10-37:15, 59:16-60:11).   A building monitor, who was active duty Navy, would unlock the building for the LCF employee(s) and return at the end of the day to lock up after the stripping and waxing was complete.   (Id.).   However, that building monitor would not stay throughout the day and monitor LCF's performance or operations.   (Id.).   That is, the Navy's involvement was to agree on a date and arrange for access to the building.   This limited involvement does not constitute controlling the day-to-day operations and detailed physical performance of LCF.

Finally, with respect to the contract between LCF and the Department of the Navy, contrary to Plaintiff's arguments, the Navy did not retain control over the day-to-day operations or detailed physical performance of LCF.   Rather, the contract contains generic terms regarding the Navy being a "partner" with its contractors, indicates the frequency that stripping and waxing should take place, and provides certain information regarding the actual stripping and waxing of the floors.   (See Contract Documents).   However, this information regarding the stripping and waxing does not rise to the level of controlling the day-to-day operations of LCF, or retaining control over LCF's detailed physical performance.

---

charge to ensure that there were no simulator events scheduled to take place that weekend.   (Id.).   If no events were scheduled, the stripping and waxing would be set for a particular weekend day. (Id.).

Rather, the contract specifies how many times per year certain buildings must be stripped and waxed, sets a performance objective that floors be "clean, sanitary and sightly", and sets a performance standard that "[f]loors are free of previously applied wax, and embedded dirt and have a uniform high-gloss finish." (Contract Documents, p. 6).  The contract also provides that furniture moved during stripping and waxing must be returned to its original position, and that LCF must protect the floor's surface, finish and fixtures installed below the floor.  (Id.).  Finally, related contract documents state that only one coat of wax is necessary, and that floor wax should be a certain type of wax that conforms to a particular brand standard.  (Contract Attachment J-0200000-09; Contract Question and Answers).   This is the extent of the specificity in the contract regarding stripping and waxing.

Based on the above, the contract sets standards for LCF to achieve, and general guidelines for how LCF is to achieve those standards.  The contract does not provide for day-to-day supervision of LCF's performance in achieving these contractual goals or standards.  The contract does not provide for constant monitoring of LCF employees, training of LCF employees, or providing supplies for LCF employees.  (See Contract Documents). Rather, LCF employees were supervised by LCF, LCF provided the supplies and training, and LCF was responsible for living up to the standards in its contractual agreement with the Navy.  (See, e.g.,

Murchison Dep., 8:5-14, 38:19-49:14, 55:9-56:1; Exhibits 3-11 to Murchison Dep.).  In this case, the United States did not have the requisite control over LCF's day-to-day activities so as to impose liability on the United States for the acts of LCF and its employees.  See Batieste, 100 Fed.Appx. at 960; Giles v. United States Dept. of Housing and Urban Dev., 1997 WL 218215, *2 (E.D. La. 1997) (citing Cavazos, 776 F.2d at 1264) ("To overcome the independent contractor exception of the FTCA, plaintiff must show that the contractor's 'day-to-day operations are supervised by the Federal Government.'").

Based on the above, the undisputed facts of the case show that LCF was an independent contractor, and not an employee or agency of the United States.  Under the independent contractor exception to the FTCA, the United States is only liable for the acts of its own employees, not for the acts of an independent contractor such as LCF.  See Lathers, 687 F.2d at 72.

## IV.  Conclusion and Dismissal of Plaintiff's Claims Against LCF

For the reasons set forth above, the United States retains its sovereign immunity and has not consented to suit with respect to Plaintiff's tort claims against the government.  Accordingly, the Court hereby DISMISSES Plaintiff's claims for negligence and gross negligence against the United States, for lack of subject-matter jurisdiction.  The United States is hereby DISMISSED from this lawsuit.

At the time Plaintiff filed the instant action, the Court had jurisdiction over the case pursuant to 28 U.S.C. § 1346(b) (suit against the United States) and 28 U.S.C. § 1331 (federal question jurisdiction).   The Court had supplemental jurisdiction over Plaintiff's state law claims against LCF.   See 28 U.S.C. § 1367. Because the United States has been DISMISSED from this case, all that remains are Plaintiff's state law claims for negligence and gross negligence against LCF.

There is no basis for Plaintiff's claims against LCF to remain pending in this Court for independent adjudication.   There is no diversity jurisdiction pursuant to 28 U.S.C. § 1332 as both Plaintiff and LCF are Texas citizens.   Consequently, the Court lacks jurisdiction based on diversity of citizenship.   28 U.S.C. § 1332.   Similarly, the Court lacks subject matter jurisdiction because it has dismissed Plaintiff's claims against the United States, the claims over which it had original jurisdiction.   See 28 U.S.C. § 1367(c); Certain Underwriters at Lloyd's, London v. Warrantech Corp., 461 F.3d 568, 578 (5th Cir. 2006)(in general, federal courts should decline supplemental jurisdiction after federal claims are dismissed or otherwise eliminated from case); Priester v. Lowndes County, 354 F.3d 414, 425 (5th Cir. 2004)(same).   Accordingly, Plaintiff's claims for negligence and gross negligence against LCF are hereby DISMISSED, without

prejudice, for lack of subject-matter jurisdiction.[11]

SIGNED and ORDERED this 28th day of August, 2007.

_____
Janis Graham Jack
United States District Judge

---

[11] The Court notes that LCF filed a motion for summary judgment in this case (D.E. 23).  Since LCF has now been DISMISSED from this lawsuit, LCF's motion for summary judgment is hereby MOOT.